Good morning, Your Honors. May it please the Court, my name is Marcelle Rice and I represent the petitioner Juan Bermudez-Arroyave. With the Court's permission, I would like to reserve three minutes for rebuttal. Petitioner raises three main challenges to the agency's withholding of removal decision. First, the immigration judge made several errors of law in evaluating whether petitioner had established the requisite causal nexus between the harm he experienced and fears and his membership in a particular social group. The Board then abdicated its responsibility to review and correct those errors by applying a clear error standard of review intended for purely factual determinations. Second, the Board's finding that petitioner merely experienced and fears general criminality and strife prevalent in Colombia, involved improper fact-finding on appeal, is too vague to permit review, and is not supported by substantial evidence. Third, the Board also erred in finding that petitioner had not established the requisite nexus because his mother and siblings remaining in Colombia had not experienced harm. In so doing, the agency failed to consider the ways in which petitioner is not similarly situated to his family members. And further, the conclusion that they remained unharmed is not supported by substantial evidence, nor even by the IJ's own fact-finding. The agency's CAT determination also involved errors of law and fact. Turning with the Court's permission to the first withholding of removal error I articulated, the IJ found that the particular social group was not legally cognizable and that there was not a sufficient nexus. The Board did not affirm the IJ's particular social group cognizability finding and assumed, in fact, that a family-based social group could be legally cognizable, but it affirmed the IJ's nexus finding. However, in doing so, it applied the clear error standard of review instead of the de novo standard of review, appropriate under Umania, Escobar, and matter of SEG. Had it applied the de novo standard of review, the outcome in this case might have been different because the judge made several errors of law. First, the IJ found that because Petitioner had not established that his particular social group was one central reason for the harm he experienced and feared, that he necessarily had also failed to establish the lower a-reason standard for withholding. This was error under Barajas-Romero. Second, the IJ required Petitioner to show that the persecutors possessed an animus or a punitive intent toward the entire family, and he made the animus the litmus test for the motivation. He stated at AR 57, they engaged in criminal acts to get money from him. This does not constitute persecution on account of his family ties because the acts were not motivated out of animus. But animus is not what this Court or the Board requires. In Petruscaya, this Court noted that it is the characteristic of the victim and not the subjective intent of the persecutor that is the central analysis. And in Matter of Kasinga, an en banc decision by the Board that is certified as a precedent, the Board found the same. In fact, in that case, they relied on Matter of Kula, which involved a Nazi concentration camp guard member who testified credibly that he was simply following orders, but the Board found that his lack of animus was not dispositive to the fact that he had their religion. The third withholding of removal error, legal error that the IJ made, was to ignore this Court's mixed motive extortion plus line of precedent. Even in the asylum context, which requires the one central reason standard, this Court recognizes that multiple motivations can exist. The IJ seems to have curtailed his analysis at the point where he determined that there was a financial motivation at play, without ever considering what other motivations might also have been a reason. The IJ never considered the specific facts that in this case show that he was sought out. He was identified by three men while he was leaving work on his motorcycle. He was stopped at a stoplight. These men knew somehow that he was the child of his stepfather. They told him that he had to settle his stepfather's debt of 10,000 U.S. dollars. They made him get off his motorcycle. They hit him over the head with the handle of the knife. They beat him viciously so that he fell to the ground, and they stabbed him in the right knee, indicating a level of violence far exceeding what was necessary for a pure robbery. Later, they found him at home by placing threatening phone calls to him, indicating again a level of knowledge about him and his family, including where he resided or at least what his phone number was. This case also then, like the last one, how do we apply Rodriguez-Zuniga? So what's your response to that case? My response is twofold, Your Honor. First, in Rodriguez-Zuniga, the board found no valid particular social group, whereas here the board assumed that there was a valid social group. Second, the circumstances of that case are very different than this one. That case involved an isolated incident of the petitioner leaving the bank, a place where general robbery may be likely to occur. It was essentially, she was in the wrong place at the wrong time, and she was robbed. This, and it was a non-violent crime as well. This case not only was extremely violent, but there were three incidents showing the specific seeking out of petitioner. First, the incident on the motorcycle. Second, the phone call at home. And later, his mother was extorted. So that shows a really different scenario. There's evidence in the record that they knew who he was, they knew who his family was, and they targeted him for that reason, unlike Rodriguez-Zuniga. Turning to the second withholding of removal error with the court's permission, the petitioner also challenges the board's finding that petitioner simply feared general criminality and strife prevalent in Colombia. But the IJ never made that finding. The IJ found that petitioner, what petitioner feared and had experienced was a crime, but he stopped his analysis at that point, determining basically that because there was a financial motivation, that it was a crime. He never found that it was random or general in nature. And the board's reliance on matter of SV and Zetino in reaching that conclusion that it was general criminality and strife show how the board failed to really look at the record in this case. Matter of SV, on which they relied, was a case based purely on country conditions. There was no past harm, no targeting. Zetino, likewise, was an incident that involved petitioner's family 14 years prior, while petitioner was already in the United States, and the petitioner's family was essentially living on a farm that the gang wanted. So he, again, showed wrong place, wrong time, not at specific targeting. To the extent that the board's finding of general criminality and strife was not an improper fact finding on appeal, it is also not supported by substantial evidence for the reasons that I articulated earlier about the specific seeking out of petitioner. Finally, the general criminality and strife finding is so vague that it doesn't allow this court to review because it really conflates nexus and well-founded fear. They cite matter of AEM, which case really turned on well-founded fear, not nexus. And with the court's permission, I would like to reserve the remainder of my time. Okay. Thank you, Ms. Rice. May it please the court. Jenny Lee on behalf of the respondent, the Attorney General of the United States. The petition for review should be denied in this case because substantial evidence supports the agency's finding that there was no motive tied to a protected ground. The BIA correctly... What do you mean by no motive? Is that what the law requires, a motive? Yes. The law requires that a petitioner establish that there was a harm or a fear of harm, and it has to be tied to one of the five protected grounds. Well, tied to is not the same as the motive. The motive has to be tied to a protected ground. Yes, Your Honor. No, but you said a motive. There had to be a motive. Yes, there has to be a motive that is tied to a protected ground. And in this case... Well, cite me a case that says there has to be a motive. Elias Zacharias tells us that a motive is crucial. In Barajas-Romero, they talk about motive being crucial. Elias Zacharias says it? I'll look at that. Yes. And so the BIA here correctly reviewed the immigration judge's motive finding under the clear error standard, and this court reviews the agency's motive finding under clear... I'm sorry, under the substantial evidence standard. And because the agency's motive finding is supported by substantial evidence, the no-nexus finding is also supported by substantial evidence. Because if you don't have a motive tied to a protected ground, how could you ever have a motive tied to that protected ground? So with regard to the specifics of this case, we have three people who stole petitioner's motorcycle. They only cared about petitioner's family relationship as a means for them to accomplish something unrelated to that protected ground. So here they wanted money, petitioner's motorcycle, and they knew they could get it from petitioner who worked. Petitioner testified that the reason why the criminals came after him was because they knew he worked. And he also testified that the criminals did not go after his siblings because they didn't work. So we know that the animus is not towards the family itself, but towards getting money. And as the court said in Rodriguez-Zuniga, as the board said in LEA 1, which is the board's decision, that you must show that there is an animus against the protected ground. And here, if the main reason, the means to an end, is money, that's not sufficient. Did they mention something about the family when they robbed him on his motorcycle? Yes, they said that it's because he owed money for his stepfather's debt. But again, if we look at the facts of this case under the magnification of substantial evidence, they were not looking at him just because of his family relationship. They wanted the money. Well, but it doesn't have to be just because. It just has to be a reason, right? That is correct, Your Honor. Not the only or the dominant reason. And wasn't that a reason why they went after him? Because of his family relationship? So a reason why they went after him is the family relationship, but that was not the motive, the intrinsic motivation that's required under this court's precedent in Rodriguez-Zuniga. So under the intrinsic motivation test, when a robber threatened the applicant's son, it was only as an instrumental means to get money from the applicant. And in that situation, the court said the robber was not motivated intrinsically by the familial relationship to the mother. And that is what we have here, based on petitioner's testimony and the evidence in the record. He testified he had money, whereas his siblings didn't, and that is why they came after him. And in that situation, the only relevance to the robber of his family relationship is that it helped them achieve their purpose, which is to get money. And under this court's precedent in Rodriguez-Zuniga, that is not sufficient. The record does not compel the established that his particular social group was a reason for why the robbers came after him. Next, if you have no further questions on this point, I'd like to move on to Umana-Escobar. In that case, remand under Umana-Escobar is not necessary in this case, because in Umana-Escobar, the board stated that there was no clear error in the immigration judge's determination on nexus. Here, that's not what the board said. The board explicitly stated that there was no clear error with regard to the immigration judge's motive determination. Then it stated that there was the general crime issue with regard to nexus, which shows that they were doing a de novo review. Second clue from Umana-Escobar is that they said that the board's no clear error statement with regard to the immigration judge's determination on nexus must be read in the context. And in that case, there was insufficient evidence from the rest of the board's decision that the board's clear error review pertained to the immigration judge's factual determination relating to persecutory motive as opposed to the ultimate nexus determination. But here, we have sufficient evidence. Like I said, the board clearly stated we find no clear error with the motive finding of the immigration judge. And then, as Petitioner's Counsel noted, the board did a de novo finding by finding that this was general crime based on the immigration judge's motive determinations that the criminals targeted him because of money. I did a Westlaw search of Umana-Escobar, and there were about 49 cases citing to Umana-Escobar, and there were only five unpublished cases where they remanded for the reason being the board stated that there was no clear error with the immigration judge's nexus determination, and it was unclear based on the board's decision that the board did not follow through with that error. Finally, I'd like to say that this case is different from Ayala. It's not an extortion plus case because in Ayala, the court found significant that the agency made a legal error saying that the persecutor, if they're motivated by money, it could never be a reason for the harm. Sorry, it could never be tied to a protected ground. And then because it made that error, it didn't make the factual finding about motive. But here, we don't have that issue. And then finally, I'd like to note that in the board's case that petitioner provided a 28-J letter on, MRMS, there was one example where petitioner's counsel cited to Perez-Sanchez, I believe, where the criminals targeted that applicant because of that family relationship. But in that case, there was a continuous contact with the applicant, and they were constantly extorting him. And in that case, the Eleventh Circuit found that substantial evidence did not support the case. However, in MSRS, there are over 10 examples of where the situation just like this one, where there are people who wanted money or the family to join the gang, was not tied to a protected ground. If the court has no further questions, the respondent rests on the brief. Thank you for your time. Thank you. Bryce, just to start you off, I think the difference between extortion plus and just extortion seems to be where this case is at. I think the issue I'm most concerned with, with your position, is Rodriguez-Zuniga, because it's a very new decision. I don't think there's been much precedent from our court applying it beyond itself. It came out only a few weeks ago, I think. But it does have some reasoning in there that seems contrary to where you're trying to take us. So I'd like you to just respond to that. Yes, Your Honor. Rodriguez-Zuniga, in that case, there's no indication that the I.J. applied the wrong legal standard, unlike here, where the I.J. never applied the a reason standard. So the I.J. never reached the question of whether there could be multiple factors at play, multiple reasons for the harm. Don't you think the I.J.'s decision makes fairly clear that in the I.J.'s view, this was all about money? Well, the I.J. said at A.R. 56, respondent was targeted because the people to whom his stepfather owed money believed he had the ability to repay them because he was an architect. Now that shows a twofold motivation. A, he had the ability to repay them, but also B, implicit in that, is that he had the duty because he was the stepson. He had the means to pay and the duty to pay. And no one, neither the I.J. nor the board has asked, has exercised the expertise in making the judgment, was the family a reason, as opposed to was it one central reason in this case. Was the crucial evidence in this that one of the robbers said something about his stepfather? Yes, Your Honor. At A.R. 104, for example, the petitioner testified that the three men who assaulted him told him he had to settle his stepfather's debt. So they referenced his stepfather then. They referenced his stepfather again when they made the threatening phone calls to him at home, which is at A.R. 59 and 118. And finally, they referenced the stepfather's debt when they extorted his mother. And I see I'm... Just to understand your position, is it your position that these kinds of references are sufficient to establish the mixed motive? I think they established but for, Your Honor, the but for causation, which is the one central reason, but that's not even what's required in this case. He just needs to show a reason. They could have chosen any architect in Columbia. They could have stopped that person on the street and said, give us all your money. But instead, they asked him for a specific amount, that amount that his stepfather owed, and they referenced his stepfather repeatedly. Okay. Thank you very much for your argument. We thank both counsel for the arguments and for the briefing. This matter is submitted, and that concludes our calendar for this morning.
judges: Siler, TASHIMA, BRESS